# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WASHINGTON

FREDRICK and ANNALESA THOMAS; and
JO-HANNA READ, as Guardian ad Litem of
E.T., a minor,

        Plaintiffs,

    v.

JASON CANNON; BRIAN MARKERT;
RYAN MICENKO; MICHAEL WILEY;
MICHAEL ZARO; CITY OF FIFE; CITY OF
LAKEWOOD; and PIERCE COUNTY
METRO SWAT TEAM,

        Defendants.

_____

FREDRICK THOMAS and ANNALESA
THOMAS, as Co-Administrators of the Estate
of Leonard Thomas, and its statutory
beneficiaries,

        Plaintiffs,

    v.

BRIAN MARKERT; MICHAEL WILEY;
NATHAN VANCE; MICHAEL ZARO;
SCOTT GREEN; JEFF RACKLEY; CITY OF
FIFE; CITY OF LAKEWOOD; PIERCE
COUNTY METRO SWAT TEAM; and JOHN
DOES 1 through 10,

        Defendants.

Nos. 3:15-05346 BJR
     3:16-cv-05392
CONSOLIDATED CASES

ORDER DENYING
PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY
JUDGMENT

1

# I. INTRODUCTION

In the early hours of May 24, 2013, a member of the Pierce County SWAT Team fatally shot Leonard Thomas. At the time Leonard was holding his four-year-old son E.T. The shooting occurred after a four hour standoff at the home where Leonard lived with his parents, Fredrick and Annalesa Thomas. These consolidated cases involve civil rights and state law claims by Leonard's Estate (3:15-cv-05346) and by Fred, Annalesa, and E.T. (3:16-cv-05392). Plaintiffs move for partial summary judgment on the issue whether Defendant Metro SWAT Team is a legal entity that can be held liable as a defendant in this lawsuit. The Court rules that Metro SWAT is not a suable entity.

# II. FACTUAL BACKGROUND[1]

The Pierce County Metro SWAT Team is a "mutual aid" emergency response law enforcement team consisting of police officers from several Pierce County cities. (Doc. No. 40-1.) The participating municipalities formed Metro SWAT by entering into an interlocal agreement ("Agreement"). The Agreement provides, in relevant part:

> 19. CONTRACT ADMINISTRATION. The parties do not by this agreement to [sic] create any separate legal or administrative entity. The parties do not intend to jointly own any real or personal property as part of this undertaking. The Signatory Agencies will cooperatively work together to further the intent and purpose of this agreement. The chiefs of police from the Signatory Agencies shall be responsible for administering the terms of this agreement.

(*Id.* ¶ 19.) Additionally, the member "cities agree that liability for the negligent or tortious actions of the [Metro Pierce SWAT Team will] be shared equally on an equal shares basis between the Participating Cities." (*Id.* ¶ 13.)

---

[1] For an extended factual background, see the Court's Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment (Doc. No. 128).

Metro SWAT operates under a manual that provides a chain of command and rules of engagement for the use of force. (Doc. No. 40-2.) A Metro SWAT Oversight Board investigates allegations of excessive use of force, seeks funding through participating cities or grant applications, and maintains authority to remove individual officers from the SWAT team. (Doc. No. 40-4 at 14, 105-06, 103.) Metro SWAT is empowered to enter into contracts with third parties. (*See* Doc. No. 40-3.)

### III. STANDARD OF REVIEW

Summary judgment is appropriate if, "taking the evidence and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Smith v. Clark County Sch. Dist.*, 727 F.3d 950, 954 (9th Cir. 2013) (quotation marks and citation omitted). A party may move for summary judgment on any claim or defense, or any part of a claim or defense. Fed. R. Civ. Proc. 56(a). As Plaintiffs' account of Metro SWAT's manner of operations is uncontested by Defendants, the disputes presented by Plaintiffs' Motion are strictly legal in nature.

### III. DISCUSSION

Federal Rule of Civil Procedure 17(b)(3) provides that an entity's capacity to be sued is determined "by the law of the state where the court is located." However, "a partnership or other unincorporated association with no such capacity under that state's law may sue or be sued in its common name to enforce a substantive right existing under the United States Constitution or laws." Fed. R. Civ. P. 17(b)(3)(A). Thus, the Court first looks to whether Washington law provides for suit against Metro SWAT. Because it does not, the Court next considers whether Metro SWAT is "a partnership or other unincorporated association" for purposes of Rule 17(b)(3)(A). It is not.

### A. Capacity for Suit under Washington Law

Washington's civil rules are silent as to a party's capacity for suit. *See* Wash. Super. Ct. Civ. R. 17. Instead, courts must rely on statutory and common law to determine capacity for suit. The Supreme Court of Washington explained, "In determining the issue of [an entity's] capacity to be sued, we must examine the enactment providing for its establishment." *Roth v. Drainage Imp. Dist. No. 5, of Clark Cty.*, 64 Wash. 2d 586, 588 (1964). Metro SWAT was formed under the authority of the Washington Interlocal Cooperation Act ("ICA"), RCW 39.34, which authorizes local governments to enter into interlocal agreements, and the Washington Mutual Aid Peace Officers Powers Act, RCW 10.93, which expands law enforcement's jurisdictional authority under certain circumstances. The Court examines each in turn.

#### 1. Washington Interlocal Cooperation Act

The ICA provides that "Any two or more public agencies may enter into agreements with one another for joint or cooperative action pursuant to the provisions of this chapter." RCW 39.34.030(2). The ICA recognizes that an interlocal agreement need not establish a separate legal entity. RCW 39.34.030(4). However, "No agreement made pursuant to this chapter relieves any public agency of any obligation or responsibility imposed upon it by law." RCW 39.34.030(5).

Plaintiffs argue that Metro SWAT contains sufficient indicia of legal independence, and point specifically to Metro SWAT policies that regulate SWAT activities and establish a chain of command; an Oversight Board that wields personnel authority and seeks needed funding; and Metro SWAT's ability to enter into contracts and purchase equipment. (Doc. No. 39 at 4-5.) While Washington courts have not articulated a specific test or set of factors for determining which entities are capable of suit, it is clear that those factors enumerated by Plaintiffs are insufficient under Washington caselaw to establish SWAT as an independent legal entity.

In *Roth v. Drainage Imp. Dist. No. 5, of Clark Cty.*, 64 Wash. 2d 586, 586 (1964), plaintiffs sued a local drainage improvement district for breach of contract related to the construction of a drainage ditch. The trial court granted defendant's motion to dismiss on the basis that the drainage district was not a municipal corporation and therefor was not amenable to suit. *Id*. at 587. The Washington law governing drainage districts provides that a board of supervisors shall make rules and regulations, RCW 85.08.680; provides for a chain of command, RCW 85.08.305; permits drainage improvement districts to enter into contracts, RCW 85.08.640; and identifies various funding sources, RCW 85.08.470. Nonetheless, the Washington Supreme Court in *Roth* concluded that "a drainage improvement district organized pursuant to this statute is under the ultimate control of the county; [] it is not a municipal corporation or a quasi-municipal corporation and does not have the capacity to sue or to be sued." *Id*. at 589-90. Contrary to the plaintiffs' argument that "substantial justice is not done if the defendant is allowed to do business as a municipal corporation or quasi-municipal corporation, and is not held responsible for obligations incurred in the exercise of that business," the Court held, "There is no merit to this argument since the plaintiffs have recourse against the county." *Id*. at 588.

Plaintiffs have not identified any legal authority that suggests the various attributes of Metro SWAT are dispositive in determining capacity for suit. While the *Roth* Court examined a different enacting statute, it suggested just the opposite.

Plaintiffs would nonetheless have a legitimate concern if the denial of Metro SWAT's legal identity prevented Plaintiffs from vindicating their rights. In *Worthington v. Westnet*, 182 Wash. 2d 500 (2015), the Washington Supreme Court addressed one circumstance where an entity may be subject to suit despite an interlocal agreement that states the parties do not intend to create a separate legal entity. *Worthington* examined the West Sound Narcotics Enforcement Team

5

(WestNET), a multijurisdictional drug task force formed pursuant to the ICA, and governed by an interlocal agreement that stated, "The parties do not intend to create, though this Agreement, a separate legal entity subject to suit." *Id.* at 503-04. The plaintiff sued WestNET under Washington's Public Records Act for WestNET's alleged failure to disclose records related to a raid of his residence. The Court recognized that Washington's Public Records Act is a "strongly worded mandate" applied to an extensive variety of local agencies and offices, and "unambiguously provides for a liberal application of its terms." *Id.* 506-07. "In light of this liberal construction," reviewing courts must determine whether the Public Records Act applies to a particular organization by inspecting whether the organization is the "functional equivalent" of a public agency. *Id.* at 507-08. "Essentially, the inquiry should focus on whether an interested individual could still adequately exercise his or her rights under the PRA if record requests and suits cannot be brought against WestNET directly." *Id.* at 509.

The Court held that it "cannot rely solely on the self-imposed terms of an interlocal agreement because the document does not reveal whether the task force, in fact, behaves consistently with that nonentity designation." *Id.* at 508. The Court acknowledged that "generally the ICA permits the formation of task forces that are unamenable to suit," but noted the ICA also "prohibits [organizations] from using that nonentity status to avoid other statutory obligations." *Id.* at 510. The Court concluded that discovery was necessary to determine whether WestNET's designation as an entity not subject to suit would frustrate the Public Records Act. *Id.* at 510. "To the extent the terms of [WestNET's] Agreement frustrate the [Public Records Act], they are unenforceable under the ICA's subsection .030(5) unless another contributing agency can satisfy those obligations on WestNET's behalf." *Id.* at 511.

Contrary to Plaintiffs' argument, *Worthington* does not require a decision in their favor. The *Worthington* Court was concerned that shielding WestNET from suit would frustrate the Public Records Act if WestNET was the only administrative entity capable of producing the relevant records. Here, notably, Plaintiffs are not suing under the Public Records Act, and Metro SWAT is not the only entity legally answerable for the violations Plaintiffs allege; Plaintiffs can – and do – bring their action against Metro SWAT's member cities. Interested individuals can still vindicate their constitutional rights if suits cannot be brought against Metro SWAT directly. And while *Worthington* recognizes that the terms of an interlocal agreement may not control in every case, Plaintiffs have not established why those terms are invalid in this case, where there is not evidence that Metro SWAT behaves inconsistently with its non-entity designation.

A closer factual analog can be found in *Hervey v. Estes*, 65 F.3d 784 (9th Cir. 1995). In *Hervey*, the Ninth Circuit held that the Tahoma Narcotics Enforcement Team ("TNET"), an intergovernmental task force made up of various local, county and Washington state agencies with authority to investigate suspected drug operations, was not amenable to suit. The Court held TNET "is only subject to suit if the parties that created TNET intended to create a separate legal entity." *Id.* at 792. "The evidence in the record indicates [that] the entities that created TNET did not envision a separate legal entity." *Id.* "Under Washington law, public agencies entering into an agreement for joint or cooperative action may, but need not, establish a separate legal entity. The important determinant is what the parties set forth in their joint operating agreement. Here, the agreement does not contemplate a separate legal entity." *Id.*

The *Hervey* Court further emphasized that despite its ruling that TNET was not subject so suit, "TNET's actions are not beyond judicial review. If, as the record indicates, TNET is designed to function as an informal association of various governmental entities setting joint policies and

practices for conducting drug investigations and raids, its component members may be sued and may be subject to joint and several liability for any constitutional violations." *Id.* And in *Bradford v. City of Seattle*, 557 F. Supp. 2d 1189 (W.D. Wa. 2008), where a plaintiff sued the Seattle Police Department for alleged constitutional violations, the court ruled, "In order to bring an appropriate action challenging the actions, policies or customs of a local governmental unit, a plaintiff must name the county or city itself as a party to the action, and not the particular municipal department or facility where the alleged violation occurred." *Id.* at 1209 (citing *Nolan v. Snohomish County,* 59 Wash. App. 876, 883 (1990). "Here," the court said, "the Seattle Police Department is not a legal entity capable of being sued. It is therefore dismissed as a defendant in this case."

As the plaintiffs in *Roth* were required to pursue their claims against the county; as the plaintiff in *Hervey* was required to pursue his claims against the component members of the intergovernmental taskforce; and as the plaintiff in *Bradford* was required to pursue his claims directly against the county or city, Plaintiffs here must seek redress against Metro SWAT's participating cities. Plaintiffs, indeed, have done so.

*2. Washington Mutual Peace Officer Powers Act*

Plantiffs further argue Metro SWAT is amenable to suit under the Washington Mutual Peace Officer Powers Act, RCW 10.93. This Act provides:

> Any liability or claim of liability which arises out of the exercise or alleged exercise of authority by an officer acting within the course and scope of the officer's duties as a peace officer under this chapter is the responsibility of the primary commissioning agency unless the officer acts under the direction and control of another agency or unless the liability is otherwise allocated under a written agreement between the primary commissioning agency and another agency.

RCW. 10.93.040.

A Washington court discussed this provision in *Sheimo v. Bengston*, 64 Wash. App. 545 (1992). That case arose after City of Colville officers directed Stevens County deputies in an

8

armed standoff with a suspect that resulted in the fatality of a passerby, Thomas Sheimo. *Id.* at 548. The Sheimo estate brought a negligence action against the City of Coville, which settled out of court. *Id.* at 547. The City then filed a third party complaint against Stevens County, claiming a right to contribution. *Id.* The court held that the County could avoid liability because its officers were under the "direction and control" of the City as provided by the Washington Mutual Aid Peace Officer Powers Act:

> The language of RCW 10.93.040 is clear. It shifts liability for a peace officer's negligence from the officer's primary commissioning agency under two circumstances: (1) if the officer acts under the direction and control of another agency, or (2) there is a written agreement between the two agencies which allocates liability. The County argues (1) controls allocation of liability because its deputies were acting under the City's direction and control. We agree.

*Id.* at 550.

Plaintiffs here argue that the Act shifts liability from the Metro SWAT officers' primary commissioning agency – their home cities – to Metro SWAT because the officers acted under the direction and control of Metro SWAT Tactical Commander Zaro, and because the interlocal agreement expressly directs that the Metro SWAT membership will equally share any liability incurred during SWAT operations.

Plaintiffs are mistaken. First, *Sheimo* concerned the allocation of liability between two entities (a city and county) that were indisputably suable; it does not suggest that the Act authorizes legal action against an entity otherwise not amenable to suit. Second, the Act provides that liability is not shifted if "liability is otherwise allocated under a written agreement." RCW. 10.93.040. The interlocal agreement regulating Metro SWAT provides, "The cities agree that liability for the negligent or tortious actions of the [Metro Pierce SWAT Team will] be shared equally on an equal shares basis between the Participating Cities." (Doc. No. 40-1 ¶ 13.) That is, liability remains with the participating cities and is not shifted to a separate Metro SWAT entity. Because this

agreement resolves liability against the participating cities, the participating cities are the proper defendants in this action.

### B. Capacity for Suit under Fed. R. Civ. P. 17(b)(3)(A)

Federal Rule of Civil Procedure 17(b)(3)(A) provides, "a partnership or other unincorporated association with no such capacity under that state's law may sue or be sued in its common name to enforce a substantive right existing under the United States Constitution or laws." Rule 17 does not define "partnership or other incorporation." In ruling that a sheriff's department was not a legal entity subject to suit, the Eleventh Circuit determined that the Rule 17(b)(3)(A) exception does not encompass government organizations:

> Nothing in the language of Rule 17(b) or in the early case law that led to the adoption of Rule 17, *see United Mine Workers v. Coronado Co.,* 259 U.S. 344, 384 (1921) (excepting United Mine Workers' Union from common-law nonsuable capacity of unincorporated associations because of enormous financial power of union and because of Congress' purpose in passing Anti–Trust Law) warrants an extension of Rule 17(b) to government units. Also, nothing in the advisory committee notes to Rule 17 or in the case law interpreting and applying Rule 17 has ever extended this "unincorporated association" exception to government units, subdivisions or agencies. We conclude, therefore, that the Jefferson County Sheriff's Department is not an "unincorporated association" for purposes of Rule 17. *Cf. Erie Human Relations Comm. v. Tullio,* 493 F.2d 371, 376 (3rd Cir. 1974) (Adams, J., concurring) (suggesting that Rule 17(b) applies only to private entities that are well-established representatives of groups of people, such as labor organizations).

*Dean v. Barber,* 951 F.2d 1210, 1214 n.4 (11th Cir. 1992); *see also Kivalina Relocation Planning Comm. v. Teck Cominco Alaska, Inc.,* 227 F.R.D. 523, 527 (D. Alaska 2004), *aff'd,* 141 F. App'x 650 (9th Cir. 2005) ("The 'unincorporated association' exception in Rule 17(b)(1) does not extend to governmental units, subdivisions, agencies or committees. The Supreme Court acknowledges, at least implicitly, this rule.") (footnotes omitted).

The Court finds this reasoning persuasive and declines to extend Rule 17(b) to render governmental units, such as Metro SWAT, amenable to suit.

## IV. CONCLUSION

Plaintiff's Motion for Partial Summary Judgment is DENIED. Metro SWAT is DISMISSED as a Defendant in this action.

**SO ORDERED.**

Dated this 1st day of June, 2017.

Barbara Jacobs Rothstein
U.S. District Court Judge