**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| FREDRICK and ANNALESA THOMAS; and JO-HANNA READ, as Guardian ad Litem of E.T., a minor,<br><br>Plaintiffs,<br><br>v.<br><br>JASON CANNON; BRIAN MARKERT; RYAN MICENKO; MICHAEL WILEY; MICHAEL ZARO; CITY OF FIFE; CITY OF LAKEWOOD; and PIERCE COUNTY METRO SWAT TEAM,<br><br>Defendants.<br>_____<br>FREDRICK THOMAS and ANNALESA THOMAS, as Co-Administrators of the Estate of Leonard Thomas, and its statutory beneficiaries,<br><br>Plaintiffs,<br><br>v.<br><br>BRIAN MARKERT; MICHAEL WILEY; NATHAN VANCE; MICHAEL ZARO; SCOTT GREEN; JEFF RACKLEY; CITY OF FIFE; CITY OF LAKEWOOD; PIERCE COUNTY METRO SWAT TEAM; and JOHN DOES 1 through 10,<br><br>Defendants. | Nos. 3:15-05346 BJR<br>3:16-cv-05392<br>CONSOLIDATED CASES<br><br>ORDER REGARDING TRIAL MOTIONS |

## I. INTRODUCTION

On May 24, 2013, Leonard Thomas was shot and killed by a Pierce County Metro SWAT Team member. Leonard's parents, Fredrick and Annalesa Thomas, as co-administrators of the Estate of Leonard Thomas (the "Estate"), brought suit pursuant to 42 U.S.C. § 1983, as well as state law claims for outrage and negligence. Fredrick and Annalesa, individually, and Jo-Hanna Read, as the Guardian ad Litem of E.T., Leonard's minor child, (the "Individual Plaintiffs") also filed suit under § 1983 and brought state law claims for outrage, the false arrest of Fredrick, and negligence. The cases were consolidated on August 11, 2016 and trial commenced on June 21, 2017.

Currently before the Court are the following motions: (1) Defendants' motion for a directed verdict pursuant to Federal Rule of Civil Procedure 50 [Dkt. No. 184]; (2) the Estate's motion regarding "loss of life" damages [Dkt. No. 187]; (3) the Estate's motion regarding the mandatory arrest jury instruction [Dkt. No. 190]; and (4) the Estate's motion to exclude Defendants' Exhibits 1018 and 1018A [Dkt. No. 188]. The Court's ruling on each motion follows.

## II. Defendants' Rule 50 Motion for a Directed Verdict

Defendants move for a directed verdict in their favor pursuant to Federal Rule of Civil Procedure 50, arguing that Plaintiffs have not produced sufficient evidence in their case-in-chief to allow a reasonable jury to find for Plaintiffs on any of their claims. Dkt. No. 184. A court may grant a motion for directed verdict "only if as a matter of law the evidence is insufficient to justify a verdict for the [non-moving party]." *Rutledge v. Electric Hose & Rubber Co.*, 511 F.2d 668, 676-77 (9th Cir. 1975). In considering such a motion, the court must review "all of the evidence in the light most favorable to the [non-moving party]."*Id.* (citing 5 Moore's Federal

Practice, 41.13(3) and (4) at 1153-56). Thus, in this case, a directed verdict is proper only if "the court finds that the evidence and its inferences, considered as a whole and viewed in the light most favorable to the [Plaintiffs], can support only one reasonable conclusion: that the [Defendants are] entitled to the directed verdict." *Fontana Pipe & Fabrication v. Ameron, Inc.*, 88-cv-0954, 1993 WL 159908, at * 2 (9th Cir. May 14, 1993) (citing *Wilcox v. First Interstate Bank*, 815 F.2d 522, 525 (9th Cir. 1987).

The Court has reviewed the parties' arguments and the evidence offered in Plaintiffs' case-in-chief, and considering such evidence in the light most favorable to Plaintiffs, rules as follows. The motion is:

1. DENIED as to the Plaintiffs' *Monell* claims;

2. DENIED as to E.T.'s negligence claim;

3. GRANTED as to the Estate's and Fredrick and Annalesa Thomas' negligence claims;

4. GRANTED as to E.T., Fredrick, and Annalesa Thomas' deprivation of familial relationship claim as to Defendants Cannon, Micenko, and Wiley and DENIED as to Defendants City of Lakewood and Zaro;

5. GRANTED as to E.T.'s and the Estate's Fourth Amendment unreasonable search and seizure claims against Defendants Micenko, Vance, Markert, Cannon, and the City of Fife, and DENIED as to Defendants Wiley, Zaro, Vance, and the City of Lakewood;

6. DENIED as to Fredrick Thomas' Fourth Amendment claim for excessive force against Defendants Cannon and Micenko and GRANTED as to the City of Fife;

7. GRANTED as to Fredrick Thomas' claim for false arrest against Defendants the City of Fife and the City of Lakewood and DENIED as to Defendants Cannon and Micenko;

8. GRANTED as to the Estate's Fourth Amendment claim for use of excessive force against Defendants the City of Fife and Vance, and DENIED as to Defendants Markert, Zaro, Wiley, and the City of Lakewood;

9. DENIED as to E.T.'s and the Estate's Fourteenth Amendment claims for unreasonable seizure of E.T. against Defendants Zaro, Wiley, Markert, and the City of Lakewood;

10. DENIED as to E.T. and Annalesa Thomas' state law claims for outrage against Defendant the City of Lakewood and GRANTED as to Defendant the City of Fife; and

11. DENIED as to the Plaintiffs' request for punitive damages.

In addition, Defendants move for qualified immunity as to Plaintiffs' excessive force claims. Defendants pled qualified immunity as an affirmative defense in their answer to the complaint, but did not seek relief on the issue until the instant motion. While it is preferable to have the question of qualified immunity resolved before trial thus preempting the expense and effort involved in a trial, it is not always the case that this can be done. *See Torres v. City of Los Angeles*, 548 F.3d 1197, 1210 (9th Cir. 2008) (noting that "[w]hile the Supreme Court has encouraged resolution of the qualified immunity issue early on in the lawsuit," triable issue of fact may preclude summary judgment on the issue). If, as here, there are factual disputes as to what took place and whether a defendant's conduct violated a plaintiff's constitutional rights, such disputes must be resolved by the jury. *Id*. at 1211; *see also Acosta v. City and County of San Francisco*, 83 F.3d 1143, 1147 (9th Cir. 1996) (noting that "the jury, not the judge, must decide the disputed 'foundational' or 'historical' facts" as to whether a defendant's conduct was unconstitutional). If the jury finds that the plaintiff's constitutional rights were violated, then the

4

question as to whether a reasonable officer would have known that the conduct was unlawful is one for the court to decide. *Acosta*, 83 F.3d at 1147.

Therefore, the Court instructs counsel to jointly propose a verdict form that presents to the jury the factual issues that it must resolve with respect to Defendants' qualified immunity defense. In the event the jury finds the necessary underlying constitutional deprivation, this Court will determine the qualified immunity issue as a matter of law while taking into account the jury's factual findings. *Id*.

### III. "Loss of Life" Damages

The Estate brings suit under 42 U.S.C. § 1983 claiming excessive force by Defendants that resulted in Leonard's death in violation of the Fourth Amendment's prohibition against unreasonable searches and seizures, among other claims. The Estate seeks damages for the loss of Leonard's life and requests that the jury be given a "loss of life" instruction in which the jury is instructed to consider the "deprivation of [Leonard's] right to life" when determining damages. Dkt. No. 187. Defendants oppose such an instruction, arguing that "loss of life" damages are specifically excluded from the Ninth Circuit Pattern Jury Instructions. Dkt. No. 199.

Section 1983 is silent on the question of whether a decedent's constitutional claims survive his death and on the issue of whether the appropriate measure for damages includes "loss of life" damages. *Bass by Lewis v. Wallenstein*, 769 F.2d 1173, 1188 (7th Cir. 1985). Therefore, courts look to state law—in this case, Washington law—to determine the survivability and the appropriate measure of damages. *Id*.; *Hirschfield v. San Diego Unified Port Dist*., 2009 WL 3248101, *3 (S.D. Cal. Oct. 8, 2009) (citing 42 U.S.C. § 1988) ("Because federal law does not cover the survival of civil rights actions under §1983, courts look to state law governing the survival of actions and the damages that may be recovered in connection therewith.").

However, this Court may apply Washington law only if it is consistent with the purpose and policies underlying § 1983. *Ostling v. City of Bainbridge Island*, 872 F. Supp. 2d 1117, at 1125-26 (W.D. Wash. 2012) (citing *Jefferson v. City of Tarrant,* 522 U.S. 75, 79 (1997)) ("The Supreme Court has stressed that state-law survival remedies apply 'unless those remedies are inconsistent with the Constitution and laws of the United States.'"). The Supreme Court has stated that "[t]he policies underlying § 1983 include compensation of persons injured by deprivation of federal rights and prevention of abuses of power by those acting under the color of state law." *Robertson v. Wegmann*, 436 U.S. 584, 590-91 (1991); *Hirschfield*, 2009 WL 3248101, *3 (S.D. Cal. Oct. 8, 2009) (compensation and deterrence are the underlying policies of § 1983). Therefore, this Court must determine whether Washington law governing survivability and damages is consistent with § 1983's twin goals of compensation and deterrence.

Washington's general survival statute provides that "all causes of action . . . shall survive to the personal representative[ ]"of the estate. Wash. Rev. Code § 4.20.046. However, the statute limits recovery in survivor actions to economic damages. *See Ostling*, 872 F. Supp. 2d at 1125-26 (citing *Harms v. Lockheed Martin Corp.*, 2007 WL 2875024, *5 (W.D. Wash. Sept. 27, 2007)). In light of § 1983's twin goals of compensation and deterrence, this Court concludes that applying Washington's survival statute's non-economic damages limitation to this case would undermine the purpose of § 1983. Given that Leonard earned little to no income in the years preceding his death, economic damages alone would be insufficient to compensate the Estate for his death and would provide no deterrent effect for future abuses of power by those acting under the color of state law.[1] What is more, precluding non-economic damages in this case would capriciously undermine the uniformity in which damages are awarded in similar § 1983 actions.

---

[1] Indeed, the Estate has waived any claim to economic damages.

What remedies are available under § 1983 should not depend on the vagaries of fifty different state statutes. *See*, *e.g.*, *Cotton ex rel. McClure v. City of Eureka*, 860 F. Supp. 2d 999, 1014 (N.D. Cal. 2012) (precluding non-economic damages in a § 1983 action where the victim dies would "undermine the statute's subsidiary goals of uniformity and federalism, particularly since a potential damage award could vary significantly depending on the forum in which the action was filed").

While the Ninth Circuit has not yet ruled on this issue, this Court's decision is consistent with decisions from the Seventh and Tenth Circuits, as well as the decisions of other courts in this district. *See*, *e.g.*, *Bass*, 769 F.2d at 1190 ("[W]here the constitutional deprivation sought to be remedied has caused death, state law that precludes recovery on behalf of the victim's estate for the loss of life is inconsistent with the deterrent policy of section 1983."); *Berry v. City of Muskogee*, 900 F.2d 1489 (10th Cir. 1990) (same); *Guyton v. Phillips*, 532 F. Supp. 1154, 1167-68 (N.D. Cal. 1981) (to deny recovery for non-economic damages "would strike at the very heart of a § 1983 action"); *Ostling*, 872 F. Supp. 2d at 1126 (citing string of cases). Accordingly, the Estate's motion for a "loss of life" damage instruction is granted.

**IV.     Jury Instruction Regarding Mandatory Arrest**

Several of Defendants' officer witnesses testified at trial that when they responded to the incident at the Thomas residence on May 23, 2013, they believed that they were dealing with "a mandatory arrest" situation under Washington law (RWC 10.31.100(2)(c)) due to Leonard Thomas' alleged interference with Annalesa Thomas' 911 call. The Estate argues that this is an incorrect statement of the law and request that an instruction be given to the jury to "cure these erroneous and prejudicial misstatements of the law." Dkt. No. 190 at 2. Defendants do not object

to such an instruction, so long as the instruction includes all of the relevant language from RCW 10.31.100(2)(c). Accordingly, The Estate's motion is granted.

### V. Motion to Exclude Defendants' Exhibits 1018 and 1018A

Defendants' Exhibits 1018 and 1018A are from Officer Quinto's April 21, 2013 police report regarding an incident between Leonard Thomas and Mary Eddington. The report details complaints Ms. Eddington made to Officer Quinto regarding the incident. Exhibit 1018A comprises of two photographs from the report, each allegedly depicting an injury to Ms. Eddington caused by Mr. Thomas.

The Court excluded these exhibits during the pretrial conference on June 1, 2017. Dkt. No. 131. Defendants provided additional briefing regarding the exhibits and requested that the Court reconsider its decision. The Court reviewed the supplemental briefing, but declined to change its ruling regarding these exhibits. Dkt. No. 140. Nevertheless, on June 22, 2017, defense counsel sought to admit Exhibit 1018 for a third time, during the testimony of Fife Sergeant Tom Thompson. Plaintiffs' objected to all but the first page of the exhibit being admitted, and, based on Plaintiffs' statement that it had no objection to the first page, the Court admitted Exhibit 1018. This was inadvertent. Exhibits 1018 and 1018A are excluded, with the exception that the first page of Exhibit 1018 is admitted.

### VI. CONCLUSION

For the foregoing reasons, the Court HEREBY:

1. GRANTS in part and DENIES in part Defendants' motion for a directed verdict pursuant to Federal Rule of Civil Procedure 50 [Dkt. No. 184];

2. GRANTS the Estate's motion regarding "loss of life" damages [Dkt. No. 187];

3. GRANTS the Estate's motion regarding the mandatory arrest instruction [Dkt. No. 190]; and

4. GRANTS the Estate's motion to exclude Defendants' Exhibits 1018 and 1018A.

Dated this 10th day of July, 2017.

Barbara Jacobs Rothstein
U.S. District Court Judge