Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

FREDRICK and ANNALESA THOMAS; and
JO-HANNA READ, as Guardian ad Litem of
E.T., a minor, and the Estate of Leonard
Thomas,

        Plaintiffs,

      v.

BRIAN MARKERT et al,

        Defendants.

Nos. 3:15-05346 BJR
     3:16-cv-05392
CONSOLIDATED CASES

THOMAS FAMILY PLAINTIFFS'
PETITION FOR ATTORNEYS' FEES,
COSTS AND EXPENSES

Noted on Motion Calendar:  August 18, 2017

## I.  INTRODUCTION

Plaintiffs Annalesa Thomas, Fred Thomas, and E.T. ("the Thomas Family Plaintiffs")
move pursuant to 42 U.S.C. § 1988, 28 U.S.C. § 1920,  Fed. R. Civ. P. 54(d)(2), and LCR
7(d)(3) for an order awarding attorneys' fees and nontaxable expenses as the prevailing party on
the judgment entered on July 14, 2017.  Dkt. 241.  The Thomas Family seeks attorneys' fees and
costs independent of similar claims by the Estate of Leonard Thomas.

## II.        BACKGROUND

### A.  Litigation History

#### 1.  Pre-Filing Activities

Fred and Annalesa Thomas engaged the law firm of MacDonald Hoague & Bayless
("MHB") on  May 28, 2013, approximately four days after Fred Thomas was arrested and
Leonard Thomas was shot in front of Annalesa and E.T.  Declaration of David Whedbee
("Whedbee Dec."), ¶ 1.  All that was known at the time was that the shooting was the
culmination of a response by the Fife Police Department and Pierce Metro SWAT to the Thomas
incident, and a large number of officers from many municipal jurisdictions had participated in
the police response and subsequent officer-involved-shooting investigation.  *Id.*, Ex. 2.

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1    To investigate and preserve available evidence, MHB hired Kay Sweeney, a crime scene

2    reconstruction expert, to do a crime scene investigation, in conjunction with MHB's in-house

3    investigator/paralegal, Troy Locati.  Mr. Sweeney later reviewed police photographs and other

4    investigative documents once those public records were made available by the involved

5    municipalities, to determine the bullet trajectory from Officer Markert's sniper rifle, among other

6    issues.  *See generally* Whedbee Dec., Ex. 4.  Mr. Locati canvassed the neighborhood and

7    interviewed neighbors and other witnesses, collected and managed audio and video recordings,

8    photographed and documented the crime scene.  *Id.*, ¶ 13.

9    From May to October 2013, MHB filed and managed approximately 30 public records

10   requests with Fife, Lakewood, the Pierce County Prosecuting Attorneys' Office, South Sound

11   911 Dispatch, Pierce Metro SWAT, and cities whose officers responded to the Thomas incident.

12   *See* Whedbee Dec., ¶¶ 17, 20-23.   Over the next year, amid various delays in document

13   production,[1] the responding agencies provided thousands of pages of records, including post-

14   incident investigatory materials by the Pierce Metro Crime Response Unit (CRU), audio and

15   video recordings, photographs, police radio recordings, and reports.  They also produced policies

16   from Fife, Lakewood, and Pierce Metro SWAT and other documentation about the shooting, the

17   investigation, and the officers involved.  *Id.*, ¶¶ 17, 24-27, 30.  After litigation started, Plaintiffs

18   requested additional records from third-party public agencies such as the Washington State

19   Criminal Justice Training Commission, and supplemental records from Lakewood.  *Id.*, ¶¶ 32-34.

20   Based on analysis of the public records it received, MHB prepared and submitted in

21   January 2015 Tort Claims with the Cities of Fife and Lakewood on behalf of its three clients.[2]

22

23   [1]The involved municipalities did not immediately produce records because of an open officer-
     involved-shooting investigation by the Pierce County Prosecuting Attorney's Office.  Plaintiffs renewed
24   their requests in September 2013, and documents in response began to arrive periodically thereafter.
     There was a delay of more than a year with respect to a large volume of documents from Fife which was
25   the subject of a claim under Washington's Public Records Act, (PRA), RCW 2.56 *et seq.*, which Plaintiffs
     settled with the City of Fife in late 2014. Whedbee Dec., ¶ 23.

26
     [2]MHB did not and could not represent Leonard Thomas or his Estate because Annalesa Thomas
27   and E.T. were alleged to be victims of tortious and criminal actions by Leonard Thomas, and Leonard
     Thomas' was arrested based on alleged complaints by Annalesa Thomas.

PLAINTIFFS' PETITION FOR ATTORNEYS' FEES - 2

Nos. 3:15-05346/3:16-cv-05392 BJR

10633.1 kh011401

1   *See* Whedbee Dec., ¶ 28; Ex. 5.  The Tort Claims were necessary to exhaust administrative

2   remedies and thereby preserve Plaintiffs' state law claims—including the negligent investigation,

3   false arrest, and outrage claims that ultimately went to the jury at trial.  *See* RCW 4.96.  Though

4   not required to do so, Plaintiffs submitted their Tort Claims "for negotiation purposes," seeking

5   to resolve both state and federal constitutional claims, not including any claims for punitive

6   damages.  *Id.,* Ex. 5 at 29.   Neither city opted to negotiate or resolve the Tort Claims at the

7   administrative stage.  *Id.,* ¶ 28.

8   **2.  Procedural History of Federal Litigation**

9   The Thomas Family Plaintiffs filed suit on May 22, 2015.  Dkt. 1.  Between November

10  2015 and June 2016, Defendants and the Thomas Family Plaintiffs exchanged written discovery

11  requests and corresponding responses.  Beginning in April 2016, Plaintiffs began deposing the

12  officers on an agreed-upon enlargement of the number of depositions Plaintiffs could take in

13  light of the sheer number of responding officers.  Whedbee Dec., ¶ 35.

14  As expected, in litigation the defense sought to blame Leonard Thomas for the Plaintiffs'

15  injuries, including the shooting and any adverse conditions E.T. suffered because of it.  At the

16  same time, discovery and continued investigation contravened many if not all the defense claims

17  about Leonard Thomas' alleged fault and misconduct.   Michelle Graunke, who was hired as

18  probate attorney and created the Estate of Leonard Thomas, filed Tort Claims on behalf of the

19  Estate.  *Id.*, ¶ 29; Ex. 6 at 4.  The Estate later retained the Connelly Law Offices and filed its own

20  Complaint.  On August 15, 2016, the cases were consolidated by order of this Court.  Dkt. 22.

21  With the cases consolidated, the parties conducted and completed the remaining

22  discovery cooperatively, with few issues that needed resolution by the Court.  The Plaintiffs took

23  a total of 31 depositions of the officers.  Whedbee Dec., ¶ 44.  The defense did not object to the

24  enlarged number of depositions, which was reasonable given that more than 50 officers

25  responded to the scene and/or participated in the post-incident investigation.  The defense also

26  disclosed two police practices experts (Ovens and Selleg), a toxicologist (Stripp), a former

27  DSHS investigator (English), animator (Brill), and journalist who addressed issues of race (Mac

PLAINTIFFS' PETITION FOR ATTORNEYS' FEES - 3

Nos. 3:15-05346/3:16-cv-05392 BJR

10633.1 kh011401

**MacDONALD HOAGUE & BAYLESS**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1    Donald)—all of whom Plaintiffs deposed and prepared to confront at trial, but none of whom the

2    defense ultimately opted to call at trial.  *Id.*

3         On January 12, 2017, Plaintiffs filed a Motion for Partial Summary Judgment that Pierce

4    Metro SWAT is a legal entity subject to suit.  Dkt. 39.  On January 26, 2017, Defendants moved

5    for summary judgment to dismiss all claims in a court-authorized overlength brief.  Dkt. 55, 57.

6    Plaintiffs' opposition addressed the defense challenges to Fred Thomas's Fourth Amendment

7    claims, the seizure of and entry into the Thomas house, E.T.'s  claims based on the shooting and

8    otherwise unreasonable seizure, the Thomas Family's Fourteenth Amendment claims, *Monell*

9    claims against the City of Lakewood, and Plaintiffs' state law claims for negligence.  Dkt. 79.

10   On May 25, 2017, the Court denied Plaintiffs' motion for partial summary judgment (Dkt. 130)

11   and also denied Defendants' Motion for Summary Judgment with respect to the bulk of

12   Plaintiffs' claims, including Fourth and Fourteenth Amendment theories, *Monell* claims of

13   municipal liability, and state law claims for negligent investigation and false arrest.  Dkt. 128.

14        The parties then prepared extensive jury instructions and verdict form to encompass the

15   many claims and defendants that the jury was to consider at trial.  Dkts. 114-119.  The parties

16   also assembled voluminous exhibits and filed several motions *in limine* as the case moved to

17   trial.  Dkts. 105, 147.

18        **3.  Settlement Negotiations**

19        Meanwhile, on May 12, 2017, the parties engaged in mediation with a retained mediator,

20   Keith Kubik.  In a good faith effort to resolve the case, the Thomas family Plaintiffs submitted a

21   14-page memorandum, supported by exhibits, which was shared with the defense.  *See* Whedbee

22   Dec., ¶ 36.  The mediation went on for a full day, but the case did not resolve.  On the eve of

23   trial, the Court ordered the parties to attend a settlement conference with Chief Judge Ricardo

24   Martinez.  The parties did so, but again were unable to reach a settlement.  *Id.*, ¶ 37.

25        **4.  Trial and Judgment**

26        The case proceeded to trial between June 21 and July 14, 2017.  Plaintiffs' case consisted

27   of testimony from six officers, the three Thomas family members (Annalesa, Fred, and Kim);

1    three neighbors; E.T.'s former teacher; and four experts (two on damages, one on crime scene

2    analysis, and one on police practices).  To avoid unnecessary repetition and the distraction of

3    side issues, Plaintiffs elected not to call a number of witnesses, including three experts, who had

4    been listed in the pretrial order and prepared to testify.  The defense put on its case through eight

5    officer witnesses, opting not to call any of its six disclosed expert witnesses.  Ms. Cartwright

6    prepared and gave the opening statement, and Mr. Ford prepared and gave the closing

7    arguments, with collective input from all Plaintiffs' counsel.  Mr. Ford, Ms. Cartwright, and Mr.

8    Whedbee each prepared for and conducted the examinations of discrete sets of plaintiff and

9    defense witnesses.  Efforts and presentations were coordinated with counsel for the Estate to the

10   extent possible given the parties' respective interests.

11   On July 14, 2017, the jury rendered a verdict for Plaintiffs on every claim.  Dkt. 237.

12   The jury also found every Defendant liable on every claim, except Defendant Micenko on Fred

13   Thomas's Fourth Amendment claim (*id.* at 7), Defendant Vance on the claim involving the dog

14   (*id.* at 6); and the City of Fife on Fred Thomas's false arrest claim. *Id.* at 8.  Based on the jury's

15   verdict, the Court entered judgment as follows: (1) for E.T. in the amount of $4,000,000.00; (2)

16   for the Estate of Leonard Thomas in the amount of $1,885,000.00; (3) for Annalesa Thomas in

17   the amount of $1,375,000.00; and (4) for Fredrick Thomas in the amount of $1,375,000.00.  Dkt.

18   241.  In addition, the judgment assessed punitive damages per the jury's verdict as follows: (1)

19   Defendant Michael Zaro in the amount of $3,000,000.00; (2) Defendant Michael Wiley in the

20   amount of $1,500,000.00; and (3) Defendant Brian Markert in the amount of $2,000,000.00. *Id.*

21   The awards to the Thomas Family Plaintiffs appear to be the largest civil rights verdict

22   and the largest award of punitive damages ever assessed by a jury in this District.

23   **B. Plaintiffs' Counsels' Experience and Hourly Rates**

24   The experience and hourly rates charged by the MHB attorneys and paralegals involved

25   in this case are summarized in the Declarations of Tim Ford, David Whedbee, and Tiffany

26   Cartwright submitted herewith.  In sum, their billing rates are as follows:  Tim Ford (partner/lead

27   trial counsel, $600/hr.); David Whedbee (partner/trial counsel, $425); Tiffany Cartwright

PLAINTIFFS' PETITION FOR ATTORNEYS' FEES - 5

Nos. 3:15-05346/3:16-cv-05392 BJR

10633.1 kh011401

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1   (associate/trial counsel, $350), Angela Galloway (associate, $325), Sam Kramer (associate,

2   $275), Troy Locati (investigator, $220), Cristy Caldwell (in court paralegal, $175), Patrick R.

3   Felde (prior paralegal, $175).  *See* Whedbee Dec., ¶¶ 10, 12, 15, 17, 39, 43.  Other MHB lawyers

4   and staff who expended  billable time on the case included Joe Schaeffer (partner, $425/hr.),

5   Jesse Wing (partner, $500), Katie Chamberlain (partner, $400), Kay Frank (of counsel, $500),

6   Laura Faulstich (paralegal, $175), and Terri Flink (legal assistant, $85).  *Id.*, ¶ 10, 43.

7   **C.  Hours Expended**

8       From the beginning, the *Thomas* case was massive and complicated in light of the

9   number of officers who participated in both the on-scene activities surrounding the shooting and

10  post-incident investigations.  *See* Ford Dec. ¶¶ 8-9.  During Plaintiffs' pre-filing investigation,

11  MHB relied heavily on paralegal staff to interview lay witnesses and collect and assimilate

12  documents through the public records process.  *See* Whedbee Dec., ¶¶ 13, 16-17.  Mr. Whedbee

13  took the lead on preparing tort claims and the complaint, with supervision by Mr. Ford.  *Id.*, ¶

14  28.  Mr. Ford and Mr. Whedbee shared responsibility for taking the officer depositions, usually

15  alone, except when deposing one of the named defendant officers where Mr. Ford would take the

16  deposition and Mr. Whedbee played a supporting role, or vice versa. *Id.*, ¶ 35.

17      Ms. Cartwright joined the case in the summer of 2016.  As discovery continued, Ms.

18  Cartwright focused on damages witnesses and deposing Defendants' damages-related expert

19  witnesses, in addition to taking some officer depositions, at her lower hourly rate.  Whedbee

20  Dec., ¶ 35.  Ms. Cartwright also researched many legal issues in connection with Plaintiffs'

21  opposition to summary judgment and shared drafting responsibilities with Mr. Whedbee on the

22  overlength brief, with Mr. Ford finalizing the document prior to filing.  *Id.*, ¶ 45.

23      As trial approached, Plaintiffs' counsel worked collaboratively in developing trial

24  strategy, dividing up responsibility for preparing the examinations of officers and defense

25  experts, including those witnesses the defense ultimately decided not to call.  Plaintiffs' also

26  divided other pre-trial tasks, for instance as Ms. Cartwright assumed the primary role in drafting

27  jury instructions and Mr. Whedbee prepared the mediation materials.  Whedbee Dec., ¶¶ 46-47.

PLAINTIFFS' PETITION FOR ATTORNEYS' FEES - 6

Nos. 3:15-05346/3:16-cv-05392 BJR

10633.1 kh011401

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1   MHB attorneys and staff expended a gross total of **4,387.8 hours** on this litigation prior

2   to judgment, as reflected in their office ledger.  *See* Whedbee Dec., ¶ 43, Ex. 7 at 140 (ledger).

3   In preparing this fee petition, Plaintiffs' counsel reviewed this ledger, corrected errors, and

4   removed time they agree is not compensable:  time for related but separate litigation under

5   Washington's Public Records Act (PRA) against the City of Fife and the Pierce County

6   Prosecuting Attorney's Office and time entries related to the Motion on whether SWAT is a legal

7   entity, which the Court denied.  *See id.*, ¶¶ 41-43.  The total amount of time thus reduced from

8   the gross number of hours worked is **198.5 hours**.  *Id.*, ¶ 43.  The resulting adjusted number of

9   attorney and staff hours worked prior to judgment claimed in this petition is **4,189.3 hours.**  *Id.*

10   The total number of attorney and staff hours worked on post-judgment tasks, including

11   the Attorney Fee Petition, supporting declarations, and other post-judgment briefing is **96.4**

12   **hours.**  *See* Whedbee Dec., ¶ 48, Ex. 8.

13   **D.  Costs**

14   Plaintiffs claim a total of $66,686.77 in costs and expenses.  *See* Cartwright Dec., ¶ 9.

15   This sum reflects the costs reasonably incurred during the litigation, including in-house printing

16   and photocopying, mileage and parking, records requests, postage and delivery, filing fee,

17   depositions (stenographic) and (video), defense expert fees for sitting for deposition, court

18   transcripts, mediation, closed caption demonstrative trial exhibits, witness fees and mileage,

19   witness travel and subsistence, meals, and guardian ad litem expenses, among other

20   miscellaneous expenses.  An itemization of reasonable litigation costs, including a cost ledger

21   showing each cost incurred and Declaration by Jo-Hanna Read (Guardian ad Litem), is filed

22   herewith.  *See* Cartwright Dec. ¶¶ 6-8; Exhibits A, C & D.

23   **III.   ARGUMENT AND AUTHORITY**

24   **A.  The Thomas Family Is Entitled to Reasonable Attorneys' Fees and Expenses.**

25   Under 42 U.S.C. § 1988, a plaintiff who prevails under § 1983 "should ordinarily recover

26   an attorneys' fee unless special circumstances would render such an award unjust." *Hensley v.*

27   *Eckerhart*, 461 U.S. 424, 429 (1983).  The Thomas Family Plaintiffs are undoubtedly prevailing

PLAINTIFFS' PETITION FOR ATTORNEYS' FEES - 7

Nos. 3:15-05346/3:16-cv-05392 BJR

10633.1 kh011401

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1   parties.  The jury found in their favor on every claim and awarded significant compensatory and

2   punitive damages against all but two Defendants (Vance and Micenko).  Dkt. 237.  Fred Thomas

3   is no less a prevailing party where, in addition to claims where it did award him damages, the

4   jury found his Fourth Amendment rights were violated but awarded no actual damages for

5   excessive force.  *Id.*, at 6, 12; *see Klein v. City of Laguna Beach*, 810 F.3d 693, 698 (9th Cir.

6   2016) ("A party that wins only nominal damages is a 'prevailing party' under the statute.").

7       **1.  Plaintiffs' Attorneys' Fees Are Reasonable.**

8       The Thomas Family Plaintiffs are requesting a straight "lodestar" fee, the product of the

9   number of attorney hours reasonably expended in the litigation multiplied by the attorney's

10  reasonable rate of hourly compensation.  *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111

11  (9th Cir. 2008).  The lodestar calculation also includes the number of hours reasonably spent by

12  paralegals and investigators.  *See Missouri v. Jenkins*, 491 U.S. 274, 277 (1989).

13      Under the lodestar method, "a district court must start by determining how many hours

14  were reasonably expended on the litigation, and then multiply those hours by the prevailing

15  local rate for an attorney of the skill required to perform the litigation." *Moreno*, 534 F.3d at

16  1111.  The number of hours to be compensated is calculated by considering whether the time

17  could reasonably have been billed to a private client. *Id.* (citing *Hensley*, 461 U.S. at 434).  As a

18  general rule, "the court should defer to the winning lawyer's professional judgment as to how

19  much time he was required to spend on the case." *Id.* at 1112.  This principle applies with

20  particular force where, as here, plaintiff's attorneys are employed on a contingency basis.  *See id.*

21  ("[L]awyers are not likely to spend unnecessary time on contingency fee cases in the hope of

22  inflating their fees. The payoff is too uncertain, as is both the result and the amount of the fee.").

23      **a.  The Hourly Rates of Plaintiffs' Counsel and Staff are Reasonable.**

24      "The hourly rate for successful civil rights attorneys is to be calculated by considering

25  certain factors, including the novelty and difficulty of the issues, the skill required to try the case,

26  whether or not the fee is contingent, the experience held by counsel and fee awards in similar

27  cases." *Moreno*, 534 F.3d at 1114.

PLAINTIFFS' PETITION FOR ATTORNEYS' FEES - 8

Nos. 3:15-05346/3:16-cv-05392 BJR

10633.1 kh011401

> As nearly as possible, market standards should prevail for that is the best way of ensuring that competent counsel will be available to all persons with bona fide civil rights claims. This means that judges awarding attorneys fees must make certain that attorneys are paid at the full value that their efforts would receive on the open market in non-civil rights cases.

*Hensley*, 461 U.S. at 447.  Courts should use current, rather than historical, rates for lodestar calculations where the legal work has been performed over a period of years and is, in part, to compensate for the delay in payment.  *See Jenkins*, 491 U.S. at 283.[3]

The hourly rates requested by Plaintiffs' legal team—are reasonable and well within the range of hourly rates charged and recovered by attorneys and paralegals of comparable experience in the local market for civil rights and other civil litigation.  *See* Whedbee Dec., ¶¶ 5-9; Ford Dec., ¶¶ 6-7; Cartwright Dec., ¶¶ 2-5; Declaration of Erik Heipt ("Heipt Dec."); Declaration of Janet Diaz.

### b.  The Number of Hours Expended by MHB Counsel Are Reasonable.

Plaintiffs seek compensation for **2,233 hours** spent on this case by MHB attorneys, and for **1,956.3 hours** worked by their paralegals and other staff.  Whedbee Dec., ¶ 43.  "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation . . . ." *Hensley*, 461 U.S. at 435. The number of hours expended reflects the unusual magnitude and complexity of this case that lasted over four years from inception to the three-week trial and judgment. Plaintiffs' counsel and Erik Heipt—a Seattle lawyer with extensive experience in police shooting cases—have both opined that this is "one of the most legally and factually complex police misconduct cases ever tried in this district." Heipt Dec. ¶ 7; Ford Dec. ¶ 6. The time and care spent by Plaintiffs' counsel in preparing this case reflects this and their recognition that "cases against the police, no matter how strong they may appear on paper, are among the most difficult to win at trial." Heipt Dec. ¶ 8.

---

[3] During this four-year litigation, Mr. Whedbee's hourly rate increased from $325 to $425. Whedbee Dec., ¶ 10. Ms. Cartwright's rate increased from $325 to $350. Cartwright Dec., ¶¶ 4-5. MHB's other applicable billing rates did not change.

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1   Most important, efforts by Plaintiffs' counsel ultimately resulted in a resounding victory

2   at trial on every claim and jury awards of considerable compensatory and punitive damages.  Per

3   *Hensley*, "[t]he most critical factor in determining the reasonableness of a fee award is the degree

4   of success obtained." 461 U.S. at 436 (internal quotation marks omitted).   Fee requests of

5   similar magnitude have been upheld where the results obtained are far, far more modest than

6   those here.  *E.g.*, *Bravo v. City of Santa Maria*, 810 F.3d 659, 665–66 (9th Cir. 2016) (affirming

7   $1.023 million attorney fee award in SWAT raid case where plaintiffs won only $5,002 at trial).

8   Finally, Plaintiffs' counsel endeavored to investigate and litigate the case efficiently by

9   dividing labor where practicable.  Some of the work overlapped, as is inevitable in a case of this

10   size and duration. *See Moreno*, 534 F.3d at 1112 ("When a case goes on for many years, a lot of

11   legal work product will grow stale; a competent lawyer won't rely entirely on last year's, or even

12   last month's, research…. [T]his is duplication, of course, but it's *necessary* duplication; it is

13   inherent in the process of litigating over time.") (emphasis in original); Ford Dec. ¶ 9.  The time

14   records generally show an efficient division of labor, with the largest amounts of time put in by

15   nonlawyers and associate attorneys with lower rates.  Whedbee Dec., ¶¶ 12-17, 35; Ex. 7 at 141.

16   Where aspects of the litigation were not successful—such as Plaintiffs' denied Motion on

17   Metro SWAT and the PRA litigation against the Pierce County Prosecuting Attorney—the time

18   spent has been removed from this fee petition.  *See* Whedbee Dec., ¶¶ 40-43.  The remaining

19   hours were all in necessary aid of the result.  *Moreno*, 534 F.3d at 1114 ("The difficulty and skill

20   level of the work performed, and the result achieved—not whether it would have been cheaper to

21   delegate the work to other attorneys—must drive the district court's decision.").

22   **c.  Plaintiffs' Lodestar Fee Claim Is Reasonable.**

23   With hourly rates adjusted to current amounts, and unnecessary hours removed as

24   specified above, the total adjusted hours claimed as reasonably worked on this case for which

25   Plaintiffs seek compensation is:  **4,189.3 hours** (2,233 adjusted hours worked by lawyers and

26   1,956.3 adjusted hours worked by their paralegals and other staff).  Applying the timekeepers'

27   hourly rates to the total reduced hours as described above, the lodestar calculation is as follows:

PLAINTIFFS' PETITION FOR ATTORNEYS' FEES - 10

Nos. 3:15-05346/3:16-cv-05392 BJR

10633.1 kh011401

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

| TIMEKEEPER | RATE | GROSS HOURS | CLAIMED HOURS | TOTAL |
|---|---|---|---|---|
| Tim Ford | $600.00 | 703.30 | 697.10 | $ 418,260.00 |
| David Whedbee | $425.00 | 762.30 | 750.50 | $ 318,962.50 |
| Tiffany Cartwright | $350.00 | 736.00 | 736.00 | $ 257,600.00 |
| Angela Galloway | $325.00 | 183.30 | 26.20 | $ 8,515.00 |
| Sam Kramer | $275.00 | 16.50 | 16.50 | $ 4,537.50 |
| Troy Locati | $220.00 | 642.50 | 642.50 | $ 141,350.00 |
| Cristy Caldwell | $175.00 | 942.30 | 942.30 | $ 164,902.50 |
| Patrick R. Felde | $175.00 | 392.77 | 369.30 | $ 64,627.50 |
| Joe Shaeffer | $450.00 | 2.60 | 2.60 | $ 1,170.00 |
| Jesse Wing | $500.00 | 2.00 | 2.00 | $ 1,000.00 |
| Katie Chamberlain | $425.00 | 1.40 | 1.40 | $ 595.00 |
| Kay Frank | $500.00 | 0.70 | 0.70 | $ 350.00 |
| Laura Faulstich | $175.00 | 1.70 | 1.70 | $ 297.50 |
| Terri Flink | $ 85.00 | 0.50 | 0.50 | $ 42.50 |
| **TOTAL FEES** | | | **4189.30** | **$1,382,210.00** |

*See* Whedbee Dec., ¶ 43.  In light of the level of success achieved in this case, and its magnitude and complexity, this is a reasonable fee for MHB's work on this case.

### 2.  Plaintiffs Are Entitled to Fees for Litigating Post-Trial Motions

A prevailing party under Section 1988 is entitled to recover fees for work performed in preparing the motion for attorney's fees itself, and for other post-trial motions.  *See, e.g., Webb v. Ada County*, 285 F.3d 829, 835 (9th Cir.2002); *Clark v. City of Los Angeles*, 803 F.2d 987, 992 (9th Cir.1986) (fees for preparation of fee petition).  As with fees for the underlying litigation, of a fee award for a fee petition is calculated using the lodestar method.  *Camacho v. Bridgeport Fin. Inc.*, 523 F.3d 973, 982 (9th Cir. 2008).

Plaintiffs have incurred additional fees, post-judgment, for preparing a motion for *additur* (Dkt. 242) and this petition for attorneys' fees and expenses.  Based on the same hourly rates set out above, and a total of 96.4 hours worked on these tasks, Plaintiffs claim a total of **$35,378.00** in fees for this post judgment work to date.  Whedbee Dec., ¶ 48, Ex. 8.

1

**B. The Litigation Expenses Requested Are Reasonable.**

2     In the Ninth Circuit, "[i]t is well established that attorney's fees under 42 U.S.C. § 1988

3 include reasonable out-of-pocket litigation expenses that would normally be charged to a fee

4 paying client, even if the court cannot tax these expenses as 'costs' under 28 U.S.C. § 1920."

5 *Trustees v. Redland Ins. Co.*, 460 F.3d 1253, 1257 (9th Cir. 2006).  Reasonable out-of-pocket

6 litigation expenses include the costs of postage, copying, meals, messenger service, and defense

7 experts' fees at depositions. *Harris v. Marhoefer*, 24 F.3d 16, 19-20 (9th Cir. 1994). They also

8 include such expenses as fees paid to private investigators, *Deocampo v. Potts*, 2014 WL

9 788429, at *13 (E.D. Cal. Feb 25, 2014), and jury and trial consultants, *Carter v. Chicago Police*

10 *Officers*, 1996 WL 446756, at *4 (N.D. Ill. Aug. 1, 1996).

11     Plaintiffs seek an award of $66,686.77 in out-of-pocket litigation expenses. These

12 expenses were all reasonably incurred and are detailed in the documents submitted herewith.  *See*

13 Cartwright Dec., ¶¶ 6-9; Ex. A; Ex. C; Ex. D.   Plaintiffs are not seeking reimbursement for the

14 considerable additional sums paid to and for the travel expenses of their expert witnesses, as

15 those are not compensable under current law.

16                              **IV.     CONCLUSION**

17     The Thomas Family Plaintiffs should be awarded **$1,382,210.00** in pre-judgment

18 attorneys' fees; **$66,686.77** in pre-judgment expenses; and **$35,378.00** in post-judgment fees and

19 expenses to date.

20     DATED this 1st day of August, 2017.

21                              Respectfully submitted,

22                              MacDONALD HOAGUE & BAYLESS

23

24                              By *David Whedbee*_____
                                    Timothy K. Ford, WSBA #5986
25                                  David J. Whedbee, WSBA #35977
                                    Tiffany M. Cartwright, WSBA #43564
26

27

PLAINTIFFS' PETITION FOR ATTORNEYS' FEES - 12

Nos. 3:15-05346/3:16-cv-05392 BJR

10633.1 kh011401

# CERTIFICATE OF SERVICE

I certify that on the 1st day of August, 2017, I filed the foregoing with the Clerk of Court using the CM/ECF System which will send notification of such filing to the following:

Attorneys for All Defendants:

Richard B. Jolley:       rjolley@kbmlawyers.com
Jeremy Culumber:    jculumber@kbmlawyers.com
Brian Augenthaler    baugenthaler@kbmlawyers.com

Attorneys for Plaintiffs (3:16-cv-05392 BJR):

John Connelly          jconnelly@connelly-law.com
Meaghan Driscoll     mdriscoll@connelly-law.com

Attorneys for Plaintiffs (3:15-cv-05346 BJR):

Tim Ford                   timf@mhb.com
David Whedbee        davidw@mhb.com
Tiffany Cartwright     tiffanyc@mhb.com


                              s/*Terri Flink*
                              Terri Flink, Legal Assistant

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961